DOCKET NO. 24-30806

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

CAM LOGISTICS, L.L.C.,

Plaintiff-Appellant

V.

PRATT INDUSTRIES, INCORPORATED; PRATT (ROCKWALL
CORRUGATING), L.L.C.,

Defendants-Appellees

_____

*On Appeal from the United States District Court*
*for the Western District of Louisiana*
*No. 20-445*
*Honorable Dee Drell*

_____

**BRIEF OF APPELLEE PRATT (ROCKWALL CORRUGATING) L.L.C.**

_____

Paul J. Masinter, La. Bar No. 18324
*pmasinter@stonepigman.com*
Andrew D. Mendez, La. Bar No.
*amendez@stonepigman.com*
Maggie A. Broussard, La. Bar No. 33033
*mbroussard@stonepigman.com*
STONE PIGMAN WALTHER
 WITTMANN L.L.C.
909 Poydras Street, Suite 3150
New Orleans, Louisiana 70112
Telephone: (504) 581-3200
Facsimile: (504) 581-3361

*Attorneys for Appellees Pratt Industries,*
*Inc. and Pratt (Rockwall Corrugating),*
*L.LC.*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel certifies that the following listed persons have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

1.    Pratt (Rockwall Corrugating), LLC is a Delaware limited liability company and is a privately held company whose membership interests are owned by its parent company, Pratt Corrugated Holdings, Inc., also a privately held company. Pratt (Rockwall Corrugating), LLC is represented by Paul J. Masinter, Andrew D. Mendez, and Maggie A. Broussard of the law firm of Stone Pigman Walther Wittmann L.L.C., New Orleans, Louisiana.

2.    Pratt Industries, Inc., is a privately held company whose stock is owned by its parent company, Pratt Holdings, Inc., also a privately held company. Pratt Industries, Inc. has been represented in the pending litigation by represented by Paul J. Masinter, Andrew D. Mendez, and Maggie A. Broussard of the law firm of Stone Pigman Walther Wittmann L.L.C., New Orleans, Louisiana.

3.    CAM Logistics, L.L.C. is an Ohio limited liability company, and its sole member is Susan Stedman, a resident of Ohio. CAM Logistics, L.L.C. is represented by R. O'Neal Chadwick, Jr., Gregory B. Odom, II, Jonathan D. Stokes, and Jacob R. Joffrion of the law firm Chadwick & Odom, LLC, Alexandria, Louisiana.

Date: April 4, 2025

Respectfully submitted,

*/s/ Paul J. Masinter*

Paul J. Masinter, La. Bar. No. 18324
Andrew D. Mendez, La. Bar No. 26686
Maggie A. Broussard, La. Bar No. 33033
STONE PIGMAN WALTHER WITTMANN L.L.C.
909 Poydras Street, Suite 3150
New Orleans, Louisiana
Telephone: (504) 581-3200
Facsimile: (504) 581-3361
pmasinter@stonepigman.com
amendez@stonepigman.com
mbroussard@stonepigman.com

*Attorneys for Appellees Pratt Industries, Inc.*
*and Pratt (Rockwall Corrugating), L.LC.*

5850506v.1

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellees Pratt Industries, Inc. and Pratt (Rockwall Corrugating), L.L.C. do ***not*** believe oral argument is necessary for the Court to resolve the issues raised by the Appellant's Brief. However, should the Court desire oral argument, Appellees request to participate in the argument.

5850506v.1

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ..................................................... i

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF CONTENTS ................................................................................... iv

TABLE OF AUTHORITIES ............................................................................. vi

I.    ISSUES PRESENTED FOR REVIEW ............................................ 1

II.   STATEMENT OF THE CASE ......................................................... 2

    A.    Rockwall Needed Warehousing Services. .............................. 2

    B.    CAM and Rockwall Begin Negotiations. ............................... 3

    C.    CAM Prepares the First Draft of a Contemplated
        Contract. .................................................................................. 4

    D.    CAM Entered Into A Lease and Began Providing
        Services, Despite The Fact That Both Parties Required A
        Written Contract. ..................................................................... 5

    E.    CAM Rejected Rockwall's Revised Proposed Draft. ............. 8

    F.    Due To Lack of Need, Rockwall Exercised its Right to
        Discontinue the Parties' At-Will Relationship. ...................... 9

    G.    Relevant District Court Proceedings. .................................... 10

        1.    The District Court Denied CAM's Motion for
            Partial Summary Judgment. ......................................... 10

        2.    Rockwall Sought and Was Granted Summary
            Judgment. .................................................................... 11

        3.    CAM Moved for Reconsideration of the Court's
            Judgment. .................................................................... 14

III.  SUMMARY OF THE ARGUMENT .............................................. 14

IV.   LAW AND ARGUMENT .............................................................. 16

    A.    Standard of Review. .............................................................. 16

**B.** The Undisputed Facts Establish That the Parties Contemplated A Signed Written Agreement to be Bound, and, in the Absence Of One, Their Relationship Was Merely At-Will. ....................................................................... 17

**C.** Because Both Parties Intended That Their Agreement Would Be Reduced To A Written And Executed Contract, CAM Cannot Hold Rockwall To A Fixed Term. .......................................................................................... 20

    **1.** CAM Cannot Foist A Fixed Term Onto Rockwall In The Absence Of The Contemplated Written Agreement ........................................................................ 20

    **2.** The District Court Did Not Rule that the Presumption Supplied by Article 1947 Could *Never* Be Rebutted. ......................................................... 22

    **3.** The District Court Correctly Held that the Theories of Confirmation and Ratification Were Inapplicable Here. ........................................................... 24

    **4.** There Is No Evidence That Rockwall Agreed To An Oral Agreement For A Three-Year Term. ................. 27

**D.** Given CAM's Knowledge Of Rockwall's Requirements, The District Court Also Properly Dismissed CAM's Detrimental Reliance Claim. ...................................................... 28

**E.** CAM's Reliance on Facts And Arguments It First Raised in Its Motion For Reconsideration Must Be Rejected. ............. 31

**F.** CAM Has Identified No Material Fact Dispute Precluding Summary Judgment Against It, Let Alone Establishing Its Entitlement to Summary Judgment in Its Favor. ....................................................................................... 33

V.    CONCLUSION .................................................................................. 35

CERTIFICATE OF SERVICE ................................................................... 36

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505 (1986)..................16

*Arc Indus., LLC v. Nungesser*, No. 17-704, 2018 WL 1181737 (La. App. Mar. 7, 2018) .......................................................23

*Big "A" Sand & Gravel Co., Inc. v. Bay Sand & Gravel Co., Inc.*, 282 So.2d 837 (La. App. 1973) .......................................................20, 21

*Breaux v. Schlumberger*, 817 F.2d 1226, 1231 (5th Cir. 1987) .......................29, 30

*Breaux Brothers Construction Co. v. Associated Contractors*, 77 So.2d 17 (La. 1954) .......................................................20

*Burnett v. ARCCA Inc.*, No. 15-1214, 2016 WL 1271073 (W.D. La. Mar. 31, 2016) ...........................................................27

*Clark v. Dept. of Pub. Safety*, 63 F.4th 466 (5th Cir. 2023) ...................................16

*Davidson v. Fairchild Controls Corp.*, 882 F.3d 180 (5th Cir. 2018)....................31

*Enterprise Property Grocery, Inc. v. Selma, Inc.,* 882 So.2d 652 (La. App. 2004) .......................................................23

*Ford Motor Credit Co. v. Bright*, 34 F.3d 322 (5th Cir.1994) ...............................17

*Harter v. Harter*, 127 So.3d 5 (La. App. 2013).......................................................22

*JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.*, 812 So. 2d 834 .............................29

*Myers v. Burger King*, 618 So.2d 1123 (La. App. 1993) .........................................23

*Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058 (5th Cir. 1993)...............29, 30

*O'Glee v. Whitlow*, 756 So.2d 1288 (La. App. 2000)........................................22, 23

*Philips v. Berner*, 789 So.2d 41 (La. App. 2001) ....................................................27

*Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265 (5th Cir. 1987) ................................ 16

*Rogers v. Brooks*, 122 Fed. Appx. 729 (5th Cir. 2004) .................................... 28, 29

*Russ v. Int'l Paper Co.*, 943 F.2d 589 (5th Cir. 1991) ............................................ 31

*Schoonover v. Hallwood Fin. Ltd.*, 590 B.R. 134 (W.D. La. July 20, 2018) ...................................................................................................... 29

*Sealevel Const., Inc. v. Westcoast Corp.*, No. 12-874, 2014 WL 3587264 (E.D. La. July 18, 2014) ................................................. 23

*Shaw Constructors, Inc. v. HPD, LLC*, 749 F.Supp.2d 474 (E.D. La. 2010) .............................................................................................. 22, 23

*Skyline Mgmt., Inc. v. Marion A. Allen, Inc.*, 2010-1294, 2010 WL 5487396 (La. App. Dec. 10, 2010) ............................................. 22

*Templet v. HydroChem Inc.*, 367 F.3d 473 (5th Cir. 2004) ........................ 16, 17, 31

*Theus Consulting Co. v. Ealy*, 939 So.2d 495 (La. App. 2006), *writ denied*, 945 So.2d 696 (La. 2006) ................................................. 25

*Tripp v. Pickens*, No. 17-0542, 2018 WL 1865876 (W.D. La. Apr. 18, 2018) ...................................................................................................... 22

*Weinhoffer as Trustee of Offshore Specialty Fabricators LLC v. Davie Shoring, Inc.*, No. 19-11175, 2020 WL 4676329 (E.D. La. Aug. 12, 2020) .................................................................................................. 27

## Statutes

Louisiana Civil Code article 1943 ........................................................................... 25

Louisiana Civil Code article 1947 ................................................ 1, 14, 15, 20, 21, 22

Louisiana Civil Code article 1967 ........................................................................... 28

Louisiana Civil Code article 2024 ........................................................................... 21

## Other Authorities

Fed. R. Civ. P. 56(a) ................................................................................................. 16

5850506v.1

Fed. R. Civ. P. 56(c)(1)(A) ......................................................................16

5850506v.1

## I.    <u>ISSUES PRESENTED FOR REVIEW</u>

Appellee Pratt (Rockwall Corrugating), L.L.C. ("Rockwall")[1] provides its own Issues Presented for Review, because Appellant CAM Logistics, L.L.C.'s ("CAM") list of issues does not accurately reflect the factual record or the District Court's holdings for which CAM seeks review.

1.    Did the District Court correctly hold that the presumption provided by Louisiana Civil Code article 1947 ("When, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form.") applied to the undisputed facts of this proceeding and that CAM failed to rebut the presumption created by Article 1947?

2.    Did the District Court correctly hold that the Louisiana law theories of ratification and confirmation were not applicable to the parties' negotiations and subsequent communications and actions?

3.    Did the District Court correctly hold that Louisiana law and Fifth Circuit precedent does not support a finding of detrimental reliance in favor of Appellant?

---

[1]    Appellee Pratt Industries, Inc. was dismissed for lack of personal jurisdiction (ROA.635), and that dismissal has not been appealed.

5850506v.1

4.      Did the District Court correctly find no genuine dispute as to any material issue of fact that would prevent the entry of summary judgment in favor of Appellee?

5.      Did the District Court abuse its discretion to the extent it did not consider new arguments raised for the first time in CAM's Motion for Reconsideration and denied the Motion for Reconsideration?

## II.      <u>STATEMENT OF THE CASE</u>

Rockwall sets out below the relevant background and undisputed facts on which the District Court relied.

### A.      <u>Rockwall Needed Warehousing Services.</u>

Rockwall is in the business of providing packaging (*e.g.,* cardboard packaging) for its customers as part of their supply chains. One of its larger customers was Procter & Gamble Co. ("P&G"). As alleged in CAM's Complaint ("Complaint"),[2] around October 23, 2017, Richard Turner (an employee of Pratt (Jett Corr), Inc. who managed the relationship between Pratt entities and P&G) and Patrick Shea (Vice President of CAM) met at an event in Detroit, Michigan. ROA.1392 at ¶¶ 2-3. Through an arrangement with P&G, Rockwall supplied corrugated packaging for another P&G supplier so that it could ship its own products

---

[2]      ROA.1288. In summarizing CAM's allegations and arguments, Rockwall does not accept them as true and reserves all rights.

to P&G. The packaging manufactured in Texas was to be stored in a warehouse in Louisiana and then shipped out as needed by that other supplier. *See* ROA.1307 at ¶ 4; ROA.1389 at ¶ 4.

Mr. Turner was not a Rockwall employee and had no authority to bind Rockwall to a contractual arrangement. See ROA.1392 at ¶ 4. Rather, contracts are required, among other things, to be reviewed and approved by the legal department ("Legal Department") and then approved and signed by the Chief Financial Officer or his designee. ROA.1392 at ¶ 5. In connection with the discussions, Mr. Turner referred CAM to John Batts, the then general manager of Rockwall's facility in Rockwall, Texas. *See* ROA.1307-1308 at ¶ 5; ROA.1393 at ¶ 5.

### B. CAM and Rockwall Begin Negotiations.

Mr. Shea, Mr. Batts, and Mr. Turner began discussing by email and telephone CAM's proposal to provide Rockwall with warehousing services in Louisiana. *See* ROA.1307-1308 at ¶¶ 5, 7, ROA.1313. From the beginning, Mr. Shea was explicit that CAM required a written agreement setting forth the terms that the parties would agree to should CAM be awarded the bid.[3] *See* ROA.1309 at ¶ 12.

Over the course of their continued discussions, Mr. Shea requested a sample warehouse agreement from Rockwall, which Rockwall provided. *See* ROA.1406-

---

[3]    In fact, in an email sent by Mr. Shea to Mr. Batts and Mr. Turner on November 8, 2017, Mr. Shea sent an agenda and what he referred to as a list of questions in advance of a telephone conference to discuss Rockwall's needs. ROA.1313.

5850506v.1

1407 at 78:11-79:2. After reviewing the sample agreement, Mr. Shea did not believe it provided sufficient protection to CAM and that some of its terms "would not work with the operational plan." ROA.1407 at 79:3-20; *see also* ROA.1406 at 78:11-16 ("Well, originally I had asked them for a sample warehouse agreement that they had and was supplied with one and I looked at that and that was not — that did not give me enough of a warm, fuzzy feeling to cover my butt for three years."). When asked at CAM's corporate deposition whether he had any understanding that Rockwall required an executed agreement, Mr. Shea responded "***Well, we [CAM] wanted one***." ROA.1408 at 80:5-7 (emphasis added).

### C.    <u>CAM Prepares the First Draft of a Contemplated Contract.</u>

On December 1, 2017, Mr. Shea sent an email to Mr. Batts with CAM's bid for the project. ROA.1441. Messrs. Shea and Batts had calls regarding the bid and the proposed pricing. Mr. Shea testified CAM agreed to lower its pricing by about five percent (*see* ROA.1435 at ¶9), but that proposal was not placed in writing. In the same telephone call in which Mr. Batts notified Mr. Shea that CAM's bid would be accepted as modified by their discussions, Mr. Shea offered for CAM to prepare a first draft of the contemplated written contract. ROA.1309 at ¶ 13.

Mr. Shea engaged an attorney to prepare CAM's first draft of a written services agreement. ROA.1399-1400 at 49:18-50:4. It was not CAM's usual practice to have an attorney draft a written warehousing services agreement; and, this was

5850506v.1

the first time CAM had engaged this particular counsel for that purpose. ROA.1400-1401 at 50:2-10, 51:11-22. CAM engaged counsel because the structure of the anticipated agreement was different and more complex than what it typically did. ROA.1402 at 52:9-25. CAM's 30(b)(6) witness, Mr. Shea, recognized that there was a "*tremendous amount of risk*" to CAM given the potential exposure. ROA.1401-1402 at 51:23-52:8 (emphasis added). In Mr. Shea's words, CAM "wanted to make sure our ducks were covered and our butts were protected." ROA.1402 at 52:6-8.

Although Mr. Shea initially indicated that CAM planned to prepare a simple written agreement, CAM's attorney provided something more complex. *See* ROA.1320. Mr. Shea acknowledged this in his email of December 11, 2017 to Mr. Batts, in which Mr. Shea attached the initial draft "for your [General Counsel] to review. Boss said we have to have lawyer draw it up. My apologies as I wanted a one pager[.]" *Id.* Among other things, this email confirms that (1) CAM itself contemplated a mutually-acceptable, signed, written contract, and (2) CAM understood that any written agreement required approval by the Legal Department. It is undisputed that Rockwall did *not* accept that draft. *See* ROA.1953.

### D. CAM Entered Into A Lease and Began Providing Services, Despite The Fact That Both Parties Required A Written Contract.

During negotiations, CAM visited multiple sites to locate a warehouse that it could suggest to Rockwall. ROA.1397-1398 at 39:9-40:9. CAM only inquired from

the locations it visited about the availability of a three-year lease. ROA.1403-1404 at 61:19-62:3.

After Mr. Shea sent Mr. Batts the initial draft, Mr. Shea inquired about the status of the contemplated written contract because CAM "need[ed] to sign the lease" of the warehouse space. *See* ROA.1332-1333. Rockwall responded to Mr. Shea's requests with confirmation that the draft was being reviewed by the Legal Department. *Id.*

When the draft had not been approved or executed as of December 27, 2017, Mr. Shea attempted an end-run around Rockwall's requirement for a signed agreement approved by the Legal Department. He asked Rockwall to issue a purchase order for the projected costs of three years of services. ROA.1334. ***Mr. Batts rejected that request and advised that he could not issue such a purchase order or sign a contract without the Legal Department's approval.*** ROA.1335. Mr. Batts' rejection was consistent with Rockwall's established policy that certain contracts (including the one in dispute here) first had to be approved by the Legal Department and then approved and signed by the Chief Financial Officer or his designee (among other things). ROA.1308 at ¶ 9.

Even after Mr. Batts sent his December 27 email stating that he "[c]an't sign …" a contract or purchase order "until [he has] legal agree," CAM still proceeded with "secur[ing] the lease with the [England Authority] in late 2017." ROA.1294 at

5850506v.1

¶ 23, ROA 1335. It was CAM's decision to enter into a lease (at its own risk) without a signed contract in hand from Rockwall for a corresponding term of years.

As alleged by CAM, "While a written contract had not been entered into between CAM and Pratt, CAM began … providing warehousing services … in January 2018." ROA.1294 at ¶ 26. CAM first sent an invoice to Rockwall on January 11, 2018. ROA.1502. A notation stated that the invoice was for "prorated charge," which Mr. Shea confirmed was for CAM's calculated start-up costs given that the warehouse was not ready to provide full services as of January 1. ROA.1433 at 118:17-25.

With the exception of that January 2018 invoice, CAM issued invoices in advance for services to be rendered the following month (as was its typical practice when providing warehousing services). ROA.1410-1413 at 96:4-99:7. Rockwall then paid those invoices during the same month the warehousing services were rendered. ROA.1502-1530. ***By paying for monthly services as they were actually rendered***, Rockwall never stated or implied that it was willing to continue the arrangement for three years (or any fixed term) absent an approved and properly executed written agreement, as the parties had always contemplated. Rockwall never wavered on its insistence on a signed, written agreement.

### E. CAM Rejected Rockwall's Revised Proposed Draft.

On February 13, 2018, Mr. Batts advised Mr. Shea that the Legal Department was continuing to work on the draft, but he forwarded a working draft that had not been internally approved. In doing so, he told Mr. Shea that he was not authorized to circulate the redline to CAM. ROA.1310 at ¶18, ROA.1350-1362. As of that date, Mr. Shea was aware that Rockwall would be proposing revisions to the contemplated contract. Discussions about the status of the draft continued until April 24, 2018, when Mr. Batts forwarded Rockwall's proposed revisions. ROA.1295 at ¶ 28, ROA.1367-1379.

Although emails were exchanged, and Messrs. Batts and. Shea may have talked by telephone, Mr. Shea did not respond regarding the substance of Rockwall's proposed draft. On May 18, 2018, Rockwall followed up with CAM on the proposed draft. ROA.1295 at ¶30, ROA.1386-1387. The parties could not recall if there was a subsequent telephone call. ***However, Mr. Shea subsequently testified that the terms of the draft prepared by Rockwall were unacceptable, and that he would not have signed the proposed draft.*** *See* ROA.1410, 1417-1418.[4]

---

[4] This testimony contradicted an Affidavit previously submitted by Mr. Shea in support of CAM's Motion for Partial Summary Judgment that stated all of the terms were acceptable and the failure to execute the contemplated contract was merely an oversight. ROA.735 at ¶ 22. When questioned about the discrepancy, Mr. Shea claimed that the Affidavit was submitted in error, invoked his Fifth Amendment right against self-incrimination, and blamed his attorney. *See* ROA.1426-1432 at 25:7-31:17.

5850506v.1

Despite not agreeing to Rockwall's proposed revisions, Mr. Shea had no recollection of whether he shared his concerns with Rockwall or with CAM's President, Susan Stedman. ROA.1418 at 125:6-18. Nor did he have any record of providing the revisions to CAM's counsel. ROA.1419 at 126:2-6. Instead, CAM determined that signing a contract was no longer a priority for CAM because it "was getting paid." ROA.1414 at 121:10-18; *see also* ROA.1418-1419 at 125:23-126:1. In fact, Mr. Shea never shared with his boss that no contract had been executed (despite her specific request that an attorney draft the agreement. ROA.1320) until March of 2020, when Rockwall officially informed CAM that it was discontinuing CAM's services. ROA.1420-1421 at 127:21-128:5.

It is undisputed that parties never executed a written contract. ROA.980. Absent an executed contract (as contemplated by both parties since the beginning of their negotiations), Rockwall understood the parties were operating on an at-will, month-to-month basis, with Rockwall only agreeing to pay for services each month as rendered. ROA.1311 at ¶ 20, ROA.1393 at ¶ 7.

### F.     Due To Lack of Need, Rockwall Exercised its Right to Discontinue the Parties' At-Will Relationship.

In the summer of 2019, Mr. Batts told Mr. Shea that due to changes in P&G's supply chain and needs, there was a possibility that the warehouse services would no longer be needed. ROA.1311 at ¶ 21, ROA.1388. Mr. Turner likewise informed Mr. Shea, in or about November 2019, of that fact. ROA.1391 at ¶10.

5850506v.1

Around January 2020, Mr. Batts told Mr. Shea that CAM's services were no longer needed and would be discontinued given that the parties' arrangement was terminable at will. Mr. Shea responded to the effect of "see you in court." ROA.1311 at ¶ 21. As alleged in the Complaint, "[i]n or around March 2020 … Pratt informed CAM [in writing] that it would no longer use CAM's warehousing services beginning on May 1, 2020, and Pratt would no longer remit monthly payments on that date." ROA.1295-1296 at ¶ 33.

Mr. Shea followed through on his threat. On April 9, 2020, CAM filed suit in the Western District of Louisiana (ROA.23.) — before Rockwall had moved out of the warehouse — seeking the application of Louisiana law (despite that fact that neither CAM nor Rockwall ever contemplated Louisiana law or a Louisiana venue). In its Complaint, CAM sought damages under theories of breach of contract and detrimental reliance and requested a trial by jury (which would have been waived under the exchanged drafts). ROA.23.

G.     **Relevant District Court Proceedings**

1.     **The District Court Denied CAM's Motion for Partial Summary Judgment.**

About three months before the close of discovery, CAM moved for partial summary judgment, seeking an order that Rockwall had breached its contract with CAM. At that time, no depositions had taken place and discovery was not yet completed. CAM relied entirely on the Affidavit of Patrick Shea to support its claim.

The issue before the District Court was whether a contract existed and, if so, its terms. In denying CAM's motion, the District Court stated, among other things, "While the evidence in the record suggests that the parties intended to be bound formally ***by written and signed agreements, that did not happen, and both parties acknowledge this failing.***" ROA.980 (emphasis added). The District Court further stated that the record presented "does not evince Rockwall's full-throated or even implied acceptance of the three year term for its dealings with CAM." ROA.984.

The District Court found, instead, that "in the absence of those signatures, what remains, potentially, is an oral agreement between the parties." ROA.981. The District Court found no undisputed evidence in the record as to whether the oral agreement included a fixed term for three years (as CAM claimed) and denied CAM's motion. ROA.984, 985.

### 2. Rockwall Sought and Was Granted Summary Judgment.

Following the close of discovery, Rockwall moved for summary judgment, based on a full record. Rockwall submitted admissible evidence demonstrating that it would consent to be bound to a three-year term only by a writing signed by both parties containing that term and other material provisions (*e.g.*, provisions that complied with Rockwall's corporate and legal requirements, such as choice of law and choice of forum). *See* ROA.1308-1309 at ¶¶ 9, 10, 11. Rockwall also submitted the sworn testimony from CAM's Rule 30(b)(6) witness (Patrick Shea) that CAM

- 11 -

also "wanted" a signed, written agreement "to make sure [CAM's] ducks were covered and [CAM's] butts were protected." ROA.1402 at 52:6-8. Accordingly, the evidence established both parties contemplated a written, executed contract.

In granting summary judgment for Rockwall, the District Court found that "even without a guarantee from Rockwall, CAM signed the lease [for warehousing space] with the England Authority, advised Rockwall of the same, and began to provide warehouse services on or about January 11, 2018." ROA.1947. The District Court went on to state:

> From October 2017 to April 2018, the parties continued to exchange drafts of the written agreement. And it was during this time that the parties entered into an oral agreement for warehouse services. CAM argues that by operating under this oral agreement, Rockwall tacitly accepted the terms of the written contract. There are several flaws to CAM's argument. First, CAM does not wish to accept the entirety of the written agreement, only the three-year term, and we have already stated that we cannot allow the parties to cherry pick provisions they wish to enforce. Second, the terms of the oral contract don't match all of the specifications of the superseded three-year contract. Although the parties negotiated a price increase over the course of the proposed three-year term, there was never an increase in price presented to Rockwall on any of the invoices submitted over the 28 months. Finally, and most importantly, we do not find the cases cited by CAM for the proposition of performance constituting tacit acceptance apply to this case.
>
> ***
>
> Now that we have made the determination that the proposed written contract and its terms are unenforceable, we can definitively say that CAM cannot cherry pick the three-year term from the ashes of unexecuted draft contract form to accept it as the duration of the oral contract.
>
> ***

- 12 -

The parties operated on a monthly basis, so it would reason that a one months' notice to terminate the warehousing agreement was reasonable under the circumstances. Even if the oral contract had no specified term of performance, La.C.C. Art. 2024 provides that "[a] contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party." Such was effected by Rockwall when they notified CAM in writing, more than a month in advance that it would not longer require CAM's services. Accordingly, CAM's claims for breach of contract lack merit and will be dismissed.

ROA.1947-1948, 1951-1952. In addition to dismissing CAM's breach of contract claim, the District Court also correctly dismissed CAM's claim for detrimental reliance. In so doing, the District Court stated, in part:

It is undisputed that the parties intended to be bound by a written contract, and the parties were still negotiating the terms of that contract when they entered into the oral agreement. CAM, via Shea, took the sole risk of entering into an actual three-year lease with the England Authority, completely disregarding Batts' repeated statements that he could not enter into a contract, including the purchase order, without the approval of Rockwall's legal department. At no time in the formation of the oral contract did Rockwall promise CAM a three-year term for warehousing services. Rather, occupancy of the space was seen as a temporary arrangement while the parties confected the written contract. *Simply put, there was never a promise by Rockwall for anything. In fact, if anyone made a promise of a three-year contract but failed to follow through, it was CAM who simply failed to execute the written agreement or continue negotiations.*

Given Batts' consistent statements regarding a lack of authority to enter into a long-term contract, as well as the parties' arrangement for monthly warehousing services, we do not find it was reasonable for CAM to have believed that it had entered into a three-year contract for warehousing services. Therefore, CAM's claim for detrimental reliance will be dismissed.

ROA.1953 (emphasis added).

### 3. CAM Moved for Reconsideration of the Court's Judgment.

Following entry of judgment in favor of Rockwall, CAM moved for reconsideration of the ruling. CAM made all of the same arguments to the District Court that it now makes to this Court. The District Court properly denied CAM's Motion for Reconsideration. ROA.2033.

## III. SUMMARY OF THE ARGUMENT

This appeal does not concern any disputed issues of fact or error in the application of Louisiana law. Rather, this appeal represents CAM's frustration that its repeated attempts to cherry pick provisions of an unsigned, unapproved draft agreement necessarily fell flat.

The critical issue here is whether, in connection with CAM providing warehousing services to Rockwall, the parties actually agreed (*i.e.*, there was a meeting of the minds) that their relationship could not be terminated for three years. Louisiana Civil Code article 1947 provides that where, as here, "the parties have contemplated a certain form, it is presumed they do not intend to be bound until the contract is executed in that form." The undisputed facts are that Rockwall was always explicit that it required a signed, executed agreement that complied with all of its legal and corporate formalities (including an agreed-upon choice of law and choice of forum) in order to be bound to a long-term agreement for a fixed term.

5850506v.1

CAM was likewise explicit that it sought a written contract (and even hired an attorney to prepare one, which was the first time CAM had ever done so).

After Rockwall discontinued the parties' relationship after 28 months, CAM initiated this action in Louisiana — despite the fact that neither party ever contemplated the application of Louisiana law or that a dispute would be brought in a Louisiana court. The District Court correctly found – on the basis of the undisputed evidence (including testimony from CAM's own representative) — that, because both parties bargained for a written contract as contemplated in Article 1947, the presumption that the parties were not bound without a written, executed contract applied. Because there was not sufficient evidence to overcome the presumption, the District Court held that the parties had entered into an oral agreement with no specific term, with either party free to terminate the at-will relationship at any time on reasonable notice.

Despite CAM's mischaracterizations to the contrary, the District Court did not find that the presumption of Article 1947 can **never** be rebutted through performance. Likewise, the District Court did not find that confirmation and ratification are wholly inapplicable where relative nullities of lack of a party's signature and lack of corporate approval are alleged. Rather, the District Court made its well-reasoned decision based on the undisputed evidence before it in this case.

The District Court also considered all of CAM's other arguments regarding the application of relevant law and the alleged disputed issues of material fact (both in its summary judgment brief and Rule 59(e) motion), and correctly rejected them, particularly given that the authorities relied upon by CAM are easily distinguishable.

In short, the District Court correctly applied Louisiana law to the undisputed facts. This Court should affirm the dismissal of this case.

## IV.    LAW AND ARGUMENT

### A.    Standard of Review.

Appellate courts review *de novo* a district court's order granting summary judgment. *Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004). Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). "[O]nly those disputes over facts that might affect the outcome of the lawsuit under governing substantive law will preclude summary judgment." *Phillips Oil Co. v. OKC Corp*., 812 F.2d 265, 272 (5th Cir. 1987) (citing *Liberty Lobby*, 106 S.Ct. at 2510). "A party that asserts there is a genuine dispute as to any material facts must support its assertion by citing to particular parts of materials in the record." *Clark v. Dept. of Pub. Safety*, 63 F.4th 466, 469 (5th Cir. 2023) (citing Fed. R. Civ. P. 56(c)(1)(A)).

5850506v.1

The standard of review of a district court's order denying a motion to reconsider depends on whether the district court considered the additional materials attached to the motion for reconsideration. *Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004) (citing *Ford Motor Credit Co. v. Bright*, 34 F.3d 322, 324 (5th Cir.1994)). "If the materials were considered by the district court, and the district court still grants summary judgment, the appropriate appellate standard of review is de novo. However, if the district court refuses to consider the materials, the reviewing court applies the abuse of discretion standard. Under this standard of review, the district court's decision and decision-making process need only be reasonable." *Id.* When the "district court does not expressly or impliedly refer to the additional materials in its ruling" the reviewing court will "review the district court's denial of the [] Rule 59(e) motion for abuse of discretion, *i.e.,* as if the district court did not consider the additional materials." *Id.*

**B.    The Undisputed Facts Establish That the Parties Contemplated A Signed Written Agreement to be Bound, and, in the Absence Of One, Their Relationship Was Merely At-Will.**

As found by the District Court, Rockwall was consistent with CAM that it required a written contract that was approved by its Legal Department and that met its other corporate requirements, before Rockwall could be bound for a fixed term. Likewise, CAM sought a written contract, in order to protect itself. ROA.1946. In the absence of that writing and evidence sufficient to overcome that presumption,

5850506v.1

the undisputed evidence wholly supports the District Court's Ruling that the parties were left with an oral, month-to-month relationship.

The undisputed facts, as detailed above and summarized below, are that:

• CAM wanted and intended to enter into a written contract. ROA.1408.

• Mr. Shea requested a sample warehouse agreement from Rockwall, which Rockwall supplied. ROA.1406-1407.

• Mr. Shea did not believe the sample agreement provide sufficient protections to CAM. *Id*.

• Rockwall conditioned any fixed term agreement on a properly approved and executed contract, subject to its corporate and legal formalities. ROA.1306.

• Mr. Batts repeatedly emphasized to Mr. Shea that any agreement on Rockwall's part would need to be approved by the Legal Department, and that he was not otherwise authorized to sign anything on behalf of Rockwall. ROA.1294, 1350-1362.

• Mr. Shea offered for CAM to prepare a first draft of the contemplated contract. ROA.1309.

• No evidence suggests that Mr. Batts objected to Mr. Shea's proposal for CAM to prepare the first draft.

• CAM went to the unusual step of engaging an attorney to prepare a draft written services agreement because CAM believed that the agreement represented a "tremendous amount of risk" to CAM given the potential risk of exposure. ROA.1399-1400, 1401-1402.

• Mr. Shea sent the first draft of a contemplated contract prepared by CAM's legal counsel on December 11, 2017. ROA.1320.

• Mr. Shea requested the status of the draft multiple times prior to signing a lease with the England Authority. ROA.1320.

• When Rockwall had not approved and executed the contemplated contract by December 27, 2017, Mr. Shea attempted to circumvent the

requirement of written contract by requesting that Rockwall issue a purchase order for three years of warehousing services. ROA.1334-1349.

•   Mr. Batts responded to Mr. Shea's December 27, 2017 request by saying that Rockwall could not issue such a purchase order and that he could not sign anything without the Legal Department's approval. *Id*.

•   Nonetheless, CAM entered into a three-year lease with the England Authority and began providing warehousing services in January 2018, without a written agreement executed by the parties. ROA.1294.

•   Rockwall provided CAM with a draft of a written contract in April 2018. ROA.1295, 1367-1379.

•   The terms of the April 2018 draft prepared were unacceptable to Mr. Shea and CAM, and Mr. Shea would not have signed the proposed draft. ROA.1406-1407.

•   Without a written contract, Rockwall understood that its arrangement with CAM was an at-will, month-to-month arrangement. ROA.1420-1421.

None of the undisputed facts point to anything other than ***both parties always understood and intended that the terms of any fixed-term agreement would need to be approved and reduced to an executed writing***. The District Court first made that finding in its Ruling denying CAM's Motion for Partial Summary Judgment and reiterated it in its Ruling on Rockwall's Motion. ROA.1946 ("[W]e did decide in our prior ruling that the parties bargained for a written contract; thus, La.C.C. art 1947 and its presumption that the parties were not bound without a written, executed contract, applied to this case."). Furthermore, there is no evidence that Rockwall

5850506v.1

ever changed that requirement or otherwise agreed, in the absence of a writing that

complied with its legal and corporate requirements, to a three-year term.

**C.     Because Both Parties Intended That Their Agreement Would Be Reduced To A Written And Executed Contract, CAM Cannot Hold Rockwall To A Fixed Term.**

**1.     CAM Cannot Foist A Fixed Term Onto Rockwall In The Absence Of The Contemplated Written Agreement.**

Louisiana Civil Code article 1947 provides: "When, in the absence of a legal

requirement, the parties have contemplated a certain form, it is presumed that they

do not intend to be bound until the contract is executed in that form." In *Breaux*

*Brothers Construction Co. v. Associated Contractors*, the Louisiana Supreme Court

explained this basic principle of law: "Since the parties in the instant case intended

from the beginning to reduce their negotiations to a written contract, neither the

plaintiff nor the defendant was bound until the contract was reduced to writing and

signed by them. Therefore, even if all of the terms of the alleged contract between

plaintiff and defendant had been verbally agreed upon, no valid contract would have

existed between the parties …." 77 So.2d 17, 20 (La. 1954). This principle has not

changed since the Louisiana Supreme Court issued that ruling, and the District Court

cited to it approvingly in granting Rockwall's Motion. ROA.1946.

When discussing the same principle in denying CAM's Motion For Summary

Judgment, the District Court cited *Big "A" Sand & Gravel Co., Inc. v. Bay Sand &*

*Gravel Co., Inc.*, 282 So.2d 837 (La. App. 1973), which also provides instructive

5850506v.1

analysis regarding Article 1947. ROA.981. That case involved a fact patten where the parties contemplated a written sale contract that was never consummated, but had proceeded in the meantime under an "interim" arrangement. Because the parties intended a written agreement, defendants were not bound to anything but the interim agreement. The *Big "A" Sand* court explained:

> [D]efendants' only obligation was to cause payment of the monthly note pending the consummation of a contract of sale. The said contract was never effected, and the court takes cognizance of the fact that the rather loose and lengthy interim arrangement was apparently never objectionable to plaintiffs until defendants elected to terminate the same. ***If the said arrangement was unsatisfactory to plaintiffs, the Court believes it was incumbent on them to so inform the defendants and to cause a determination of their respective rights and obligations. Plaintiffs were instead content to enjoy the benefit of the receipt of the monthly note payment, and thus cannot now be heard to complain of the benefits defendants received in return.***

*Id.* at 843-44 (emphasis added); *see also* La. Civil Code Art. 2024 (permitting the termination of a contract that does not specify a duration).

Likewise here, as the District Court found, CAM knowingly allowed the arrangement to go undocumented (*see* ROA.1953) — despite stating that it wanted a written contract and knowing that Rockwall also required one. If that "loose and lengthy" arrangement was unsatisfactory to CAM, it was incumbent on CAM "to cause a determination of their respective rights and obligations." Having failed to do so, CAM cannot now attempt to impose an arrangement to which Rockwall never consented.

### 2. The District Court Did Not Rule that the Presumption Supplied by Article 1947 Could *Never* Be Rebutted.

CAM offers a straw man argument that the District Court held "the 'presumption' created by Article 1947 cannot be rebutted through performance". Br. at 8. ***However, CAM never specifies where in the District Court's Ruling it purportedly did so — because it never made that ruling.*** In fact, in its prior briefing, CAM conceded that "the Court did not expressly state that Article 1947 was an 'irrebuttable' or 'conclusive' presumption." ROA.1967.

Rather, the District Court, after examining the record, did "not find the cases cited by CAM for the proposition of performance constituting tacit acceptance apply to this case." ROA.1947-1948. CAM now cites the same cases to this Court, but each of the cases is easily distinguishable based on the undisputed facts.

Unlike in *Tripp v. Pickens*, relied on by CAM, there are no material issues in dispute as to the parties' intent or the applicability of Article 1947.[5] A number of CAM's cases do not even reference Article 1947 and were not considering the requirements and presumptions of that article.[6] Several of CAM's cases involved

---

[5] No. 17-0542, 2018 WL 1865876 (W.D. La. Apr. 18, 2018).

[6] *See Harter v. Harter*, 127 So.3d 5 (La. App. 2013); *Skyline Mgmt., Inc. v. Marion A. Allen, Inc.*, 2010-1294, 2010 WL 5487396 (La. App. Dec. 22, 2010); *Shaw Constructors, Inc. v. HPD, LLC*, 749 F.Supp.2d 474 (E.D. La. 2010); *O'Glee v. Whitlow*, 756 So.2d 1288 (La. App. 2000).

5850506v.1

either leases or the transfer of immovable property,[7] neither of which is at issue here. Others involved executed letters of intent,[8] documents lacking one party's signature,[9] or other documents evidencing all of the agreed-upon terms,[10] none of which is present here. And unlike any of the cases cited by CAM, both parties here bargained for a written contract, either because it was required by their corporate and legal policies and/or in order to protect themselves in the future. ROA.1946.

In its Reasons, the District Court specifically discussed the evidence demonstrating that the parties' performance was not consistent with all of the terms of the drafts exchanged (or even with CAM's initial bid by email). ROA.1947, 1951-1952. As the District Court held, the undisputed evidence (summarized above) conclusively demonstrates and is consistent with an oral agreement for month-to-month, at-will services (*e.g.,* monthly invoices submitted and paid), rather than ratification or confirmation of a three-year term. ROA.1951-1952.

Accordingly, despite CAM's characterizations to the contrary, the District Court's decision was not based on a blanket ruling that the presumption of Article

---

[7]    *Enterprise Property Grocery, Inc. v. Selma, Inc.,* 882 So.2d 652 (La. App. 2004); *O'Glee v. Whitlow*, 756 So.2d 1288 (La. App. 2000).

[8]    *See Arc Indus., LLC v. Nungesser*, No. 17-704, 2018 WL 1181737, at *2 (La. App. Mar. 7, 2018).

[9]    *Sealevel Const., Inc. v. Westcoast Corp.*, No. 12-874, 2014 WL 3587264 (E.D. La. July 18, 2014).

[10]   *Shaw Constructors, Inc. v. HPD, LLC*, 749 F.Supp.2d 474 (E.D. La. 2010); *Myers v. Burger King*, 618 So.2d 1123 (La. App. 1993).

1947 could not be rebutted by performance. Rather, the District Court issued a well-reasoned decision based on the settled law and a complete factual record that the presumption was not overcome by the undisputed evidence.

### 3. The District Court Correctly Held that the Theories of Confirmation and Ratification Were Inapplicable Here.

The District Court correctly held that Louisiana theories of confirmation and ratification were inapplicable to the facts of this case. CAM's arguments to the contrary fall flat for numerous reasons.

First, the District Court correctly held that CAM failed to meet its burden of establishing there is a relative nullity to consent. ROA.1950. CAM has not pointed to any evidence in the record that Rockwall ever gave consent to be bound to a three-year term orally or in writing. Instead, CAM points to performance (addressed below) and alleged inaction or silence, which as explained herein are not consent.

Second, the evidence regarding the monthly payments is that the oral discussions and drafts exchanged by the parties contemplated a particular fee schedule for a three-year period, with the first year being $49,928.69 per month, and increasing to $55,728.66 per month in the second and third years. *See, e.g.*, ROA.831-832. However, as shown by the invoices, the fees never increased after the first year. ROA.801-829. Accordingly, the parties' payment history, as well as the notation on the invoices for ***monthly service charges*** supports the District

Court's conclusion that the parties' relationship was at-will based on an oral agreement. ROA.1951-1952.

Third, Mr. Batts was explicit with CAM, during the parties' negotiations and throughout the discussions, that any agreement for a fixed term, among other things, was required to be (1) reviewed and approved by the Legal Department, (2) in writing and in a form that satisfied all corporate and legal formalities and requirements, and (3) executed by both parties. He was also explicit that he had no authority to enter into an unapproved agreement on behalf of Rockwall, as found by the District Court. ROA.1950. Because the District Court found a valid, oral contract, there was no other contract to be confirmed or ratified. *Id.*

Fourth, CAM cannot legally seek to enforce an agreement that it rejected. Louisiana Civil Code article 1943 provides that an acceptance not in accordance with the terms of the offer is deemed to be a counteroffer. A response that modifies or adds to the original offer is a counteroffer, rather than an acceptance of the original offer. *Theus Consulting Co. v. Ealy*, 939 So.2d 495, 498-99 (La. App. 2006), *writ denied*, 945 So.2d 696 (La. 2006). Therefore, the draft sent by Rockwall was at most a counteroffer that CAM rejected, as testified to by CAM's corporate representative

5850506v.1

(Mr. Shea). *See* ROA.1410, 1417-1418. There is no evidence that Rockwall ever accepted that counteroffer (because it did not). [11]

The District Court's Ruling noted that it was Mr. Shea's failure to either (1) sign the draft agreement sent by Mr. Batts, or (2) continue negotiations regarding the terms of that draft, that resulted in the lack of a written contract for a three-year term. ROA.1953. That finding gets to the very heart of offer and acceptance. On this point, CAM relies on cases in which a party forwarded an unsigned draft accepted and signed by the other party, but did not sign the draft itself. Those cases involved efforts by the party *that signed* to enforce it against the party that prepared (but did not sign) the same agreement. That is simply not the situation here.

Finally, CAM's own actions in filing a suit in Louisiana, seeking a jury trial, and seeking the application of Louisiana law in these proceedings — all of which are inconsistent with all of the drafts — confirm that CAM did not believe the drafts were enforceable. *See* ROA.23-32. Relying on confirmation or ratification would permit CAM to improperly enforce only two provisions of the lengthy draft agreements, rather than enforce the drafts in their entireties (*e.g.,* all exchanged drafts included forum selection and choice of law clauses that would have required

---

[11]    Whether the last draft provided to Mr. Shea was a final draft that *could have* been executed by the parties is academic. No evidence suggests CAM actually accepted the last draft provided by Rockwall. Indeed, the evidence was that Mr. Shea found the last draft *un*acceptable. ROA.1410, 1417-1418.

either party to bring suit in a state other than Louisiana and apply the laws of another state).[12] As explained by the District Court, and as stated by the Western District of Louisiana in other proceedings, a party cannot "cherry pick the provisions of the contract which help his purposes the most and then discard the rest." *Burnett v. ARCCA Inc*., No. 15-1214, 2016 WL 1271073, at *4 (W.D. La. Mar. 31, 2016).

Accordingly, the District Court properly rejected CAM's arguments on confirmation and ratification, as this Court should as well.

### 4. There Is No Evidence That Rockwall Agreed To An Oral Agreement For A Three-Year Term.

"[I]t is horn book law that the consent of the parties is necessary to form a valid contract and where there is no meeting of the minds between the parties the contract is void for lack of consent."[13] While the District Court found there was an oral agreement for warehousing services provided on a monthly, at-will basis, it did ***not*** find an oral agreement for a three-year (or any specific) term. Nor could it make such a finding, because there is no evidence in the record that would support such a finding. Instead, the evidence established the parties contemplated being bound for

---

[12]     CAM's pre-trial motions made it clear that, in addition to a three-year term, CAM also sought to cherry-pick an attorney fee provision to enforce from the draft agreements and demanded a jury, despite the drafts waiving a jury. *See* ROA.1947.

[13]     *Weinhoffer as Trustee of Offshore Specialty Fabricators LLC v. Davie Shoring, Inc*., No. 19-11175, 2020 WL 4676329, at *2 (E.D. La. Aug. 12, 2020) (citing *Philips v. Berner*, 789 So.2d 41, 45 (La. App. 2001)).

5850506v.1

a term only upon execution of a written, signed agreement approved by the Legal Department and signed by the Chief Financial Officer — none of which happened.

Accordingly, CAM's claim for breach of contract cannot stand and was properly dismissed as a matter of law.

### D. Given CAM's Knowledge Of Rockwall's Requirements, The District Court Also Properly Dismissed CAM's Detrimental Reliance Claim.

Not only does Rockwall's explicit requirement of a written, signed contract (that met its corporate and legal requirements) preclude a breach of contract claim by CAM, it also necessitated the dismissal of CAM's claim for detrimental reliance. Louisiana Civil Code article 1967 is clear that a party can only be obligated under a theory of detrimental reliance "by promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment." However, there is nothing in the record demonstrating any *promise by Rockwall*. Without a promise, there can be no detrimental reliance, as correctly found by the District Court. ROA.1953.

The fact that the parties may (or may not) have merely "anticipated" a three-year relationship does not equate to a binding agreement to a three-year relationship. Therefore, CAM was not justified in proceeding on a three-year lease with the England Authority without a three-year agreement from Rockwall. *See Rogers v. Brooks*, 122 Fed. Appx. 729, 733 (5th Cir. 2004) (in upholding summary judgment

5850506v.1

dismissing detrimental reliance claim, this Court noted that the parties "anticipated entering into a written agreement, and the proposed written agreement contained terms that were not mutually agreeable"; as such, "any reliance on an alleged promise to sell … was unreasonable"); *Schoonover v. Hallwood Fin. Ltd.*, 590 B.R. 134, 144 (W.D. La. July 20, 2018) (dismissing detrimental reliance claim and noting that "although a plaintiff is not required to prove the existence of a formal, valid and enforceable contract to recover under detrimental reliance, *reliance on a promise 'not in the form contemplated by the parties is presumptively unreasonable*" and that "[t]his is particularly true when there are ongoing negotiations between the parties, and their lawyers are involved in drafting agreements") (quoting *JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.*, 812 So. 2d 834, 840) (La. App. 2002) (emphasis in original). Therefore, the District Court properly dismissed CAM's detrimental reliance claim.

CAM incorrectly assumes the District Court's Ruling did not consider the holding of *Breaux v. Schlumberger* and *Newport Ltd. v. Sears, Roebuck & Co.*, even though CAM cited to these cases in both its opposition to Rockwall's Motion and in support of its own Rule 59(e) Motion.[14] However, the District Court previously

---

[14] CAM's suggestion that *Breaux* is binding precedent on detrimental reliance is incorrect. First, the Court noted that the article governing detrimental reliance was then new and that its review of the law did not reveal a case with direct authority. 817 F. 2d at 1230. Second, the Court stated that both the district court and a prior panel of the Fifth Circuit concluded that the defendant "did enter into an oral lease through the actions and letters" of the

5850506v.1

determined that cases that involved leases of property are distinguishable given that this matter does not involve a lease or sublease.[15] ROA.983 at n.2.

Furthermore, both cases are readily distinguishable. In *Breaux*, a Schlumberger employee represented to the lessor that a lease would be entered into by his employer (with no further limitations or stipulations), and asked the lessor to forward a written agreement. 817 F.2d 1226, 1228 (5th Cir. 1987). The lessor replied that it would cease all efforts to rent the space and hold it open for the employer. *Id.* In contrast here, Mr. Batts always informed CAM that he could ***not*** enter- into a contract for a three-year term or issue a three-year purchase order, without the approval of the Legal Department (among other things). ROA.1950-1951.

*Newport Limited v. Sears, Roebuck & Co.*, is equally inapplicable. There, both parties signed a letter of intent. 6 F.3d 1058, 1062 (5th Cir. 1993). The Court found sufficient details in the executed document that a jury could find that the plaintiff was reasonable in relying on the document. *Id.* at 1067. In contrast, here, there was

---

defendant's employee. *Id.* The Court then stated this met the first requirement of representation by conduct for the action of detrimental reliance. *Id.* However, the finding of an oral agreement would negate the application of detrimental reliance, and it is unclear why the Court analyzed the matter under the theory of detrimental reliance if it had previously found that the parties entered into an oral agreement.

[15]   The distinction between a lease and other types of contracts (such as the services agreement at issue here) is material because Louisiana has an entire set of statutes that govern leases and not other types of contracts. La. Civ. Code Book III, Title IX.

5850506v.1

no such executed document on which CAM could have reasonably relied, thereby requiring dismissal of CAM's detrimental reliance claim.

Accordingly, this Court should affirm the dismissal of CAM's detrimental reliance claim.

### E.     CAM's Reliance on Facts And Arguments It First Raised in Its Motion For Reconsideration Must Be Rejected.

In its Rule 59(e) Motion, CAM improperly raised for the first time certain facts and arguments, and now attempts to rely upon them on this appeal. This Court has held "that an unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." *Templet v. Hydrochem Inc.*, 367 F.3d 473, 479 (citing *Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir. 1991)). In *Templet*, this Court noted that the underlying facts "were well within [the appellant's] knowledge prior to the district court's entry of judgment" and that the appellant "failed to include these materials in any form of opposition or response" to the motion for summary judgment. *Id.*

While Rockwall submits that CAM's new arguments are dubious on their face, this Court need not consider the merits of the argument because CAM did not raise it before the District Court ruled on Rockwall's Motion. *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 185 (5th Cir. 2018) ("We will not consider new evidence or arguments raised for the first time in a motion for reconsideration"). Nonetheless, assuming *arguendo* that the Court was to consider these new

arguments, they do not change the fact that this Court should affirm the grant of summary judgment in favor of Rockwall.

On reconsideration, CAM argued the language of a "Transportation and Spotting Services" clause of a draft sent by Rockwall somehow bound it to that draft. Again, that clause was known and available to CAM during the entirety of these proceedings, as the drafts had been attached to nearly every substantive motion filed throughout these proceedings, including CAM's motion for partial summary judgment. *See* ROA.745-754, 831-842. For that reason alone, this Court may disregard the untimely argument.

In any event, that clause referred to transportation arranged with a third-party carrier to transport the packaging from the warehouse in Alexandria to the P&G plant and is, therefore, inapplicable to the analysis at issue on this appeal. Furthermore, CAM's argument is illogical, as it would allow CAM to foist consent by silence on Rockwall with respect to a draft agreement that CAM rejected.[16] And again, even if that were possible (which it is not), it would permit CAM to improperly cherry-pick only the provisions it wants to enforce.

---

[16]    Not surprisingly, CAM cites nothing in the record supporting its interpretation. There has been no testimony regarding what the language allegedly meant. Mr. Shea certainly never testified he thought an executed agreement was unnecessary because of this language. To the contrary, CAM rejected that draft.

CAM also pointed to an email it did not reference or rely upon in its opposition to Rockwall's Motion — and therefore should also be rejected out of hand. In any event, the email actually supports the dismissal of CAM's claims. In the email, Mr. Shea asked Mr. Batts "are we okay to start working at the agreed upon billing rate without a contract?" ROA.1983. Of note, Mr. Shea's question refers only to the billing rate. No other alleged material terms are referenced, and certainly not a three-year term. Nonetheless, Mr. Batts did not respond to Mr. Shea's question. And again, CAM points to no jurisprudence that would allow CAM's unilateral question to impose a contract upon Rockwall to which it had not agreed.[17] This is particularly true, given that in the same email chain Mr. Batts had already denied Mr. Shea's request for a purchase order in the full amount of the anticipated contract. ROA.1348.

### F.    CAM Has Identified No Material Fact Dispute Precluding Summary Judgment Against It, Let Alone Establishing Its Entitlement to Summary Judgment in Its Favor.

CAM offers several purported disputed facts that supposedly preclude summary judgment against it: (i) the roughly two years of monthly payments by Rockwall; (ii) Mr. Batts forwarding an unsigned agreement to CAM; (iii) a transport

---

[17]    CAM's claim that the Court should have considered "Rockwall's encouragement to proceed with the operation" (ROA.1982) is not supported by CAM's submissions. CAM does not point to any "encouragement" to proceed without a contract. Rather, CAM attached an email for which Rockwall provided no response. No response is not "encouragement" to act in a certain way.

agreement; (iv) an email exchange about proceeding with operations; and (v) Shea's willingness to proceed without a signed contract. However, if anything, these facts support the grant of summary judgment in Rockwall's favor for several reasons.

*First*, as explained in section V(C)(2), above, the monthly payments are consistent with an at-will, month-to-month oral agreement with no specific term.

*Second*, as explained in section II(E), above, not only did Mr. Shea never execute and return any written agreement proposed by CAM, but he acknowledged CAM was unwilling to agree to the written form proposed by Rockwall.

*Third*, the Transportation and Spotting agreement is discussed in section V(E), above. As discussed there, CAM had that document available to it at all times, yet failed to raise it until filing a motion for reconsideration. The agreement is unhelpful to CAM in any event, as it relates to a third-party and CAM is effectively trying to use it to bind Rockwall by silence, which has no basis here in law or fact.

CAM's Fourth and Fifth purported facts are based on its contention that an email in which Mr. Shea asked if CAM should proceed "without a contract" — a question to which Rockwall never responded — somehow bound Rockwall, or "encouraged" CAM to proceed with work. CAM first raised these arguments in its motion for reconsideration, and they should be deemed waived for that reason alone. Even if the Court were to consider these arguments, for the reasons explained in section V(E) and footnote 18, above, CAM's argument is substantively meritless.

Accordingly, there was and is no genuine issue of material fact that would preclude summary judgment in favor of Rockwall. It necessarily follows that CAM is not entitled to summary judgment in its favor.

## V.    **CONCLUSION**

For all of the reasons addressed herein, the Court should affirm the ruling of the District Court granting summary judgment in favor of Rockwall and dismissing these proceedings in their entirety.

Date: April 4, 2025                 Respectfully submitted,

*/s/ Paul J. Masinter*
Paul J. Masinter, La. Bar. No. 18324
Andrew D. Mendez, La. Bar No. 26686
Maggie A. Broussard, La. Bar No. 33033
STONE PIGMAN WALTHER WITTMANN L.L.C.
909 Poydras Street, Suite 3150
New Orleans, Louisiana
Telephone: (504) 581-3200
Facsimile: (504) 581-3361
pmasinter@stonepigman.com
amendez@stonepigman.com
mbroussard@stonepigman.com

*Attorneys for Appellees Pratt Industries, Inc.*
*and Pratt (Rockwall Corrugating), L.LC.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of April, 2025, the foregoing

Appellee Brief of Pratt (Rockwall Corrugating), LLC has been served on all counsel

of record via the Court's electronic filing system.


*/s/*     *Paul J. Masinter* _____

5850506v.1

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS</u>

1.     This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 8,626 words, excluding the part of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally space typeface using Microsoft Office Word in 14 point Times New Roman font.

Date: April 4, 2025                    Respectfully submitted,

                                      */s/ Paul J. Masinter*
                                      Paul J. Masinter, La. Bar. No. 18324
                                      Andrew D. Mendez, La. Bar No. 26686
                                      Maggie A. Broussard, La. Bar No. 33033
                                      STONE PIGMAN WALTHER WITTMANN L.L.C.
                                      909 Poydras Street, Suite 3150
                                      New Orleans, Louisiana
                                      Telephone: (504) 581-3200
                                      Facsimile: (504) 581-3361
                                      pmasinter@stonepigman.com
                                      amendez@stonepigman.com
                                      mbroussard@stonepigman.com

                                      *Attorneys for Appellees Pratt Industries, Inc.*
                                      *and Pratt (Rockwall Corrugating), L.LC.*

5850506v.1